Pecje, J.,
delivered tbe opinion of tbe court:
Tbe claimant, George W. Travers, by bis petition, represents that be is a citizen of Gbicago, in tbe State of Illinois. He also represents tbat, on or about the 15th day of December, 1864, at Leavenworth, in tbe State of Kansas, he entered into a written agreement or contract with George T. Robinson, first lieutenant 11th Kansas volunteer cavalry, and chief engineer of tbe Department of Kansas, in which contract or agreement be undertook and agreed to supply tbe Army of tbe United States, for tbe purpose of constructing certain barracks and forts along tbe eastern border of tbe State of Kansas, lumber, nails, sash and doors, glass, stoves, and other material, useful and necessary in and about tbe construction of said barracks and quarters, according to tbe plans and estimates as made by said engineer officer of tbe United States. He further shows tbat, acting under tbe direction and instructions of said engineer officer, and inpxirsuance of said contract, he furnished said Army of the United States, through said engineer officer, and at the places and times as by him required, Irnge quantities of building material, and received therefor voucher receipts, which are annexed to tbe petition as exhibits.
He avers in bis petition tbat tbe contract price and value of a portion of said materials so furnished appears in said vouchers, and tbat they amounted in tbe aggregate to tbe sum of $12,762 70. '
Claimant “ distinctly alleges that all of tbe materials mentioned in said vouchers were furnished to, and received by, said engineer officer, and those acting under bis authority, in pursuance of said contract.”
Tbat tbe vouchers, before being delivered to claimant, were approved by tbe general commanding tbe department.
Claimant avers tbat be is unable to set out a copy of the original contract, as he has not the contract in his possession, but says he believes the original is among the Government archives.
*333 He further represents that, after the materials were delivered, to, and accepted by, said engineer officer, for which said vouchers were given, he was notified by said engineer officer that he had received orders from the War Department to suspend all •further work upon said barracks and forts, and that, in accordance therewith, claimant must deliver no more materials till otherwise directed; and that when he was directed to stop work and deliver no more materials, he had on hand a large amount of materials, with which he proposed to complete his contract. That some of said materials were complete and ready for delivery, while others were in process of completion; and he avers that some time after he received the notice heretofore mentioned to suspend work, he received official notice from said engineer officer, as well as from the general commanding the Department of Kansas, that he would not be called upon to deliver any more materials on said contract, for the reason that orders from Washington City had stopped all further work on said barracks and forts. That being prohibited from further carrying out his contract, he set about disposing of his materials on hand and arranging his affairs, so that as little loss as possible would fall upon him; and that, acting with all prudence and caution, he, nevertheless, suffered damage, by reason of the rescinding of said contract by the Government, in amount not less than ten thousand dollars.
The petitioner further stated to the court, that since said vouchers were delivered to him he had been compelled to assign an interest in the same, and that about the sum of forty-two hundred dollars thereof now belong to A. C. Ellithorpe, of the city of Chicago, and that nearly the entire remaining portion belongs to Wm. B. Gere, of the city of Chicago.
The claimant distinctly presents his claim as depending upon a written contract, which has been lost, or, to use the language of the petition, “which he is unable to set out, the original contract, as he believes, being among the Government archives.’^ The contract is not produced by claimant, nor is the defendant notified to produce it; but an effort has been made to account for it as a lost instrument, and to show its contents. The mind might more readily have been led to the belief that such an instrument once existed had any witness been examined who. had ever seen it, or any advertisement inviting proposals for it, or the proposals themselves.
*334 All these things are referred to by one or more witnesses, but by all of them in such way as not to produce conviction that any of them ever existed. There is no proof of detail, nothing as to time, place, or circumstance, connected with the execution of a contract. Before a party can expect to recover upon, a lost contract, he should show that there has been one to lose. At common law, if there had been a contract the claimant might have sworn to its loss, and the search made for it, and then he might prove its contents, but he has not done so. He does not even verify the petition which states its loss. Bobin-son, the officer whom it is alleged entered into the contract on the part of the United States, is not made a witness.
The vouchers made exhibits are incident to, and depend upon, a contract. If there was not a contract, there cannot be vouchers growing out of it. There is no averment in the petition of any indebtedness that does not depend upon a contract.
“ The rule that the loss of a paper ought to be established before its contents can be proved is well settled,” is the language of Chief Justice Marshall, in delivering the opinion of the Supreme Court. (See 7 Wheaton, p. 154; see, also, G-reenleaf’s Ev., vol. 1, sec. 558 ; Starkie’s Ev., p. 531, and following pages.)
Only one witness speaks of searching for the contract, and that search, he states, was made in the War Department. If there was a contract in existence, the search for it should have been made in the “returns office” in the Department of the Interior, where the law directs that all such instruments shall be kept. The way not to find the paper was to search for it in the War Department, where it was not, nor was required tobe; and proof of such search does not come up to the requirements of the law, as necessary to authorize the introduction of secondary evidence to show its contents.
The vouchers, it is shown by the claimant’s witness, who prepared them for signature, were not founded upon a contract, for he says he never saw one; but he says they were prepared from and based 'upon' estimates, which he (the witness) had previously made, preliminary to an advertisement inviting proposals for a contract, and as a guide in accepting proposals. Some of the vouchers were signed by an officer of engineers, to be paid by the Quartermaster’s Department. The Act éth July, 1864, (13 Stat. L., pp. 394, 395,) had directed that such contracts should be exclusively within the control of quarter *335 masters. An officer of engineers was not acting- in tlie line of bis duty wben he issued the vouchers, and they do not of themselves furnish prima facie evidence of validity.
The attempt to support this case by the introduction of hearsay testimony about the contract, and what the major general in command in conversations said in reference to it, is a mis- ■ taken one. There is no proper foundation laid for the introduction of such evidence, and if there had been the proof offered is unsatisfactory and inconclusive. The general in command, if he did -what is said, transcended his authority, as he had’no power to do what is alleged. Eeference is more than once made to the orders of the major general directing and approving the contract, yet not one of these orders is produced; nor is the failure to produce them accounted for. It is probable that the reference to the orders and remarks of this officer are the results of mistake and misunderstanding.
A commanding officer in an emergency might authorize the purchase and procurement of supplies, &c., without advertising for proposals, and without a written contract, (see 12 Stat. L., p. 220;) but in a case like this, where the contract was to be executed after long delay, where it is not pretended an emergency existed, he could not dispense, by reason of any authority reposed in him, with the performance of all the preliminaries and duties which the statute expressly requires as necessary to make a contract obligatory.
If the commanding officer could waive the prerequisites and formalities required by the statute, the orders intended to excuse irregularities or infractions of the law, or which would show that a party claimant was within exceptions favorable to himself, should be in writing, and are so presumed to be. Without that, the orders instead of being a shield might become a sword. Few, if any, who embark in the business of life as this claimant appears to have done, are so ignorant as not to know that in all transactions where right and wrong, or the law and its disobedience are involved, that the necessary evidence to x>ro-tect them against apparent omission or fault should always be conclusive and accessible. If a party stakes his chances for gain against the law, rather than in conformity to it, if he misjudges and disappointment overtakes him, like all other transgressors, he will find his way a hard one, and he must suffer the consequences.
*336 Whoever appeals to the law for redress must show, iu relation to the matter in controversy, that he has abided by it.
The evidence in the record does not establish that the articles described in the vouchers were ever delivered to the United States, or if they had been what their value was. Similar articles were delivered, and other vouchers which are not involved in this suit were given for them ; but there is an omission to prove that the identical articles named in the vouchers referred to in this petition were ever delivered. The vouchers drawn by an officer not authorized in that behalf, upon a department to which he was not attached, are not presumptive proof.
The claimant by his brief relinquishes all claim for damages for loss of profits, as set up by the petition and the amendment thereof.
The Assistant Attorney General makes the following, with other objections, to a recovery by the claimant:
I. The contract between Bobinson and Travers was illegal and void.
1. It was not in writing and signed by both parties, as provided in Act 2d June, 1862, (12 Stat. L., p. 412.)
2. It was not made after advertising for proposals, as provided in Act 2d March, 1861, (12 Stat. L., p. 220, § 10.) No exigency of the public service requiring the immediate delivery of the articles is shown.
The Act Mh July, 1864, (13 Stat. L., p. 394,) places the subject-matter of this contract under the charge of the sixth division of the Quartermaster General’s office. Robinson was a lieutenant of volunteers, detailed on staff duty as an engineer. He had no connection whatever with the Quartermaster’s Department. He had no right under the act of July 4 to make such a contract under any circumstances; and if he had had such right, not a single provision of the act was complied with. When Robinson assumed to make a contract with Travers, it was the duty of the latter to inquire what authority was vested in Robinson to bind the Government. This rule was laid down in Henderson’s Case at the present term of this court.
II. There being no valid contract with Travers, he can have no claim further than for the value of property actually delivered to and used by the Government. His testimony does not show the amount of property delivered nor its value. The vouchers given by Robinson are not evidence of anything. *337 They were not given by Eobinson in the line of his official duty. Besides, it appears from the testimony of Chas. E. Eamus, that the vouchers, so far as the amount of material was concerned, were made out from information furnished by Eamus, the latter being simply a hired engineer, in no way connected with the Army. Nor does the approval of General Curtis to the vouchers amount to anything. He had no more legal authority to approve the vouchers than Eobinson had to issue them.
Many of these objections by the United States are regarded as valid and well taken.
The Assistant- Attorney General makes an additional point, that the claimant has forfeited any claim he may have against the Government, because the facts stated in General Hardie’s report, which is made a part of the record, show that claimant has corruptly practiced or attempted to practice fraud against the United States in the establishment of his claim.
We do not accept the ex parte report of General Hardie as evidence. It furnishes information which, if sustained by legal evidence, might defeat the claim for all time, no matter in what manner prosecuted. But the report, although suggesting many matters for inquiry in preparing a defense to the claim, is not evidence to establish any fact against the claimant. No defense alleging fraud has been interposed, as is required by the thirteenth rule of this court.
We do not adhere 'to any novel, technical, or rigorous rule, when Ave require the allegations and proofs in a case to correspond. At law, in equity, also in admiralty, where rules of pleading and proceeding are less strict than at law or in equity, the same rule must be observed. The Supreme Court, on appeal from a decision in admiralty, said that the proofs of each party must correspond substantially with his allegations.” (19 Howard, 172.) There is no hardship toward a claimant by exacting of him obedience to this sensible rule. He knows his case and what testimony he has with which to sustain it. He can state and restate his case in his petition at his option, and he should not complain if he is required to so state it that the Attorney General, who is not supposed to be equally well informed, may be fully advised as to Avhat he is called upon to explain or disprove. The'advantage is always with the claim- *338 aut, who, haYing bis choice of statements, should, when be brings bis contestant across tbe threshold of tbe court, tell him very plainly and correctly why be does so. Where tbe defendant is tbe Government, “ an abstract entity which has no band to write or no mouth'to sx>eak,”and cannot have personal knowledge, depending wholly upon agents through whom alone it can act, and against whom there is seldom any recourse for misfeasance or malfeasance, the enforcement of the rule is all the more appropriate and necessary.
The major general who it is said authorized this contract is deceased. His explanation of the matter cannot be had. Bob-inson, who it is said signed the contract, has hot been examined. The claimant was not compelled to go to trial without his testimony. The claimant’s counsel in their-brief say: “We have endeavored without success to obtain the testimony of Lieutenant Bobinson, who is stationed at a distant frontier post. There is, however, on file with the papers, an official return of that officer, and an ex parte affidavit, giving in some detail the history of this transaction. Both the report and affidavit sustain us in all we shall urge, but as the facts necessary to recovery are fully sustained by other means, we have preferred not to attempt the introduction of testimony of questionable competency.”
We do not find these “other means” in the record. If they are on file the claimant has not submitted them to us. It is probable they would not have benefited him, had he done so.
All we find in the record from Bobinson about the contract is an extract in the report of General Hardie, from what he calls a “ statement” of Lieutenant Bobinson, which is as follows:
“At this time I was introduced to Mr. George W. Travers, who was at that time, I believe, a contractor for paving the streets of Leavenworth. Major General Curtis advised me to make a contract with Mr. Travers for all the hardware, doors, sash', glass, door and window frames, &c., and upon this expressed desire I made a contract with Mr. Travers, in the presence of General Curtis, for this material.”
This does not show a legal contract obligatory upon the United States.
It is not stated to have been in writing, and all the circumstances, as he narrates them, plainly Indicate that the requisites and conditions demanded by the statutes in order to make a contract binding, were not observed.
*339 In a case recently decided, (7 Wallace, 666,) tbe Supreme Court use tbis language: “Our statute-books are filled with acts authorizing tbe making of contracts with tbe Government through its various officers and departments, but in every instance tbe person entering into such a contract must look to tbe statute under which it is made, and see for bimself that bis contract comes witbin tbe terms of tbe law.”
Not only must tbe person look to tbe statute under wbicb a contract is made to see that it comes witbin tbe terms of tbe law, but be must also look to tbe statute to see that tbe officer wbo makes tbe contract bas authority to bind tbe Government in tbe way in wbicb be undertakes to do so. The written law is tbe exclusive source of authority for tbe officer, and be must do what tbe law directs, or tbe Government will not be bound by bis action.
Tbe petition is dismissed.